Oi,i>ham, J. This was a bill filed by Biseoe and others, as Trustees of the Real Estate Bank to foreclose a mortgage executed by Duncan, to secure the amount of stock awarded to him as a stockholder of said bank. The bill seeks a sale of the mortgaged premises for the payment of $11,700, borrowed from the bank by Duncan upon the credit and security of his stock under the 17th section of the charter. The defendants below demurred to the bill upon several grounds; the demurrer was overruled and the case has been brought into this court by appeal. It is insisted by the appellants in support of their demurrer to the bill ill the court below, that the Real Estate Bank, at the time of the execution of the deed of assignment by her to the complainants as trustees, had no legal interest or title in or to the bonds and mortgages executed by the stockholders in accordance with the provisions of the charter, and that consequently the complainants acquired no such interest by virtue of the assignment as will enable ■them to maintain their suit for the purposes indicated in their bill. The determination of the question so presented depends entirely upon the provisions of the charter. The often contradictory provisions contained in that instrument, the vague and indefinite manner in which many of them are expressed have often been a source of much perplexity both to the bar and to the bench, when called upon to investigate questions arising and to determine rights brought into litigation under its enactments. In such case the only safe guide to a correct conclusion is a strict adherence to the rational rule of construction laid down by this court in the case of The State vs. Ashley, 1 Ark. R. 542, “that the court must keep in view the nature and design of the grant, and its general intention and scope.” If we inquire as to the object which the legislature had in view in providing for the execution of bonds and mortgages by the stockholders of the bank, we will have no difficulty in arriving at the conclusion that such bonds and mortgages were intended to fill the requirements of the constitution by providing “such security from the individual stockholders- as would guarantee the State against loss or injury,” in consequence of the pledge of the public faith and credit to obtain the capital of the bank. The capital was obtained by a sale of bonds issued by the State to the bank, and the legislature, for the purpose of guarding the public interest and to secure the State against loss or injury,- enacted “that all subscriptions to the capital stock of said bank shall be guaranteed and secured by mortgages and bonds, executed to said Real Estate Bank of the State of Arkansas, to be in all cases at least equal to the amount of stock subscribed, which said mortgage shall be conditioned for the payment of all mone}^ received from said bank, on account of subscriptions for stock, and for the final payment of the bonds of the State and the interests thereon, subject to such rules, regulations and restrictions as may be hereinafter provided, which said mortgages shall form the basis of and stand as a full security for the loan or loans and interests thereon, which the said directors are authorized to make, and designated in the first section of this act.” See Charter, sec. 13. It was also further enacted “that for the guarantee of the bonds to be emitted by the State in favor of the Real Estate Bank and of the interests thereof, and for which the State pledges its faith and-credit, all the bonds with the privileged mortgages executed for stock, are hereby transferred to the State and the holders of the bonds, which may be issued by. the State in virtue of this act; and the Governor shall only emit the State bonds after it shall have been proven to him by the certificate of the president of said bank, that mortgages shall have been executed by the stockholders of said bank in conformity with and according to the true intent and meaning of this act for at least one eighth more than the bonds required.” .Charter, sec. 14. It is manifest from these provisions of the charter of the bank, as before stated, that the main object of the legislature in requiring bonds and mortgages of the stockholders, was to fill the requirements of the constitution by affording an indemnity to the State against loss or injury in consequence of the pledge of the public faith and credit, in the form of State bonds, upon which the capital of the bank was obtained. It is equally clear, and needs no argument to establish the proposition, that the lien of the State and bondholders upon the lands and premises mortgaged under and by virtue of the provisions of the charter just quoted, is paramount to all others, claiming under the charter. By keeping in view the general intention and scope of the grant, a careful examination of the provisions of the charter leads to the clear and manifest conclusion that the bank, in receiving subscriptions for stock, as well as bonds and mortgages from the stockholders for the security of the stock awarded to them respectively, acted solely as the agent or trustees of the State, and those who should thereafter become the purchasers and holders of the bonds emitted by the State to the bank, and in the negotiation of those bonds she acted as the agent of the stockholders. Her whole character in these transactions was strictly fiduciary. By receiving bonds and mortgages from the stockholders to secure the stock respectively awarded to them, she was securring the interests of the State and the bondholders, and in the negotiation of the State bonds emitted by the State upon the guarantee and security of the bonds and mortgages of the stockholders, she was acting in behalf of the stockholders and thereby procured the capital necessary to commence and carry on banking operations, which is usually paid in directly by the stockholders themselves. Although her corporate name was used as the obligee of the bonds and mortgages executed by the stockholders, as well as of the bonds issued by the State, yet it is evident that it was only intended to facilitate the accomplishment of the purposes intended by the charter — the interest subserved being those of the stockholders, the State and holders of the State bonds. After the bonds and mortgages were executed, the State bonds emitted and negotiated, and the capital received by the bank, her legal and beneficial interests attached in the same manner as though she had received the capital stock directly from the stockholders, without the intervention of the State by a pledge of the public faith and credit. Having determined the capacity in which the bank acted in receiving the bonds and mortgages executed by the stockholders, and in negotiating the bonds'issu'ed by the State as well as the original interests of the parties, and the rights and objects intended to be secured by the bonds and mortgages of the stockholders, we will next proceed to the inquiry for what purpose were those bonds and mortgages retained in the custody of the bank, and by what title did she continue to hold them? The purpose for which they were deposited and retained in the custody of the bank is declared by the 31st section of the charter, viz: “that the bonds and privileged mortgages shall be deposited in the offices of the said principal bank and branches respectively, when the said stock shall have been subscribed as security for the re-imbursement of the capital as well as the interests of the bonds granted by the State, and whenever application shall be made by a stockholder-to transfer his stock and be discharged, such transfer and discharge may take place upon the new stockholder’s furnishing mortgage to the satisfaction of at least a majority of the directors,” <fcc. It is thus clearly and explicitly expressed and declared by the charter, that the bonds and mortgages were to be deposited in the principal bank and her several offices or branches as a security for the re-imbursement of the capital as well as the interests of the State bonds, and to facilitate the transfer of stock and the substitution of stockholders. It thus appears from the charter that the bonds and mortgages of the stockholders were required in compliance with the constitution to guarantee the State against loss or injury in consequence of the pledge of the public faith and credit, to raise the funds to carry the bank into operation; that they were transferred by the charter to the State and the holders of the State bonds, and were deposited in the principal bank and branches respectively as security for the reimbursement of the capital and interests on the State bonds. No other than a fiduciary interest in, or title to the stock bonds and mortgages is conferred upon the bank by the express provisions of the charter. If she held any other interest or title in or to them, it is derived by implication from the provisions of the charter, and results as a necessary consequence from the provisions of the grant. It is contended on the part of the appellees that the amount of credit to which the stockholders were entitled under and by virtue of the seventeenth section of the charter was based upon the stock mortgages, and that in case of a failure of payment by a stockholder, to whom such loan may have been made, according to the provisions of that section, the bank is entitled to foreclose the mortgage and sell the mortgaged estate. Had such been the intention of the legislature, such a power and right would not have been left to mere implication, but express language would have been used. Furthermore, it would seem that the legislature would have required that the mortgages should bear upon a sufficient amount of property to cover both the bonds executed by the stockholders as well as the amount of notes and obligations given to secure the amount so loaned. But the mortgages and stock bonds were to be for the same amount which was to be in all cases at least equal to the amount of stock subscribed, and the same condition was to be annexed to each. Will it be contended that the bank can sue upon the bonds of the stockholders given under the 13th section of the charter for recovery upon a loan made to a stockholder under the 17th section ? The right is equally clear as to sue upon the mortgage. The amount of credit to which the stockholders were entitled, was not based upon the security of the stock mortgages, but upon the stock owned and held by the borrower — the amount of stock subscribed by him having already been paid into the bank for him by the State and purchasers and holders of the State bonds. His stock bond and mortgage stood as a full security to them for the re-imbursement of the capita] stock for him, as well as the subsequently accruing interest, and the stock so paid in and held by the borrower formed the basis of the loan to him and security for the repayment of the amount so borrowed. It was not supposed that the stock would ever depreciate so low as not to afford ample security for one-half of its nominal amount. This security could be made available by a judgment and execution at law. A note or obligation was required by the borrower upon which suit could be brought by the bank, and upon judgment and execution obtained against him, his stock was by the 30th section of the charter made subject to seizure and sale. The case between the stockholder and the bank as debtor and creditor stands as though the amount of stock owned by the stockholder had been originally paid into the bank by him, without the intervention of the State and a loan and negotiation of State bonds. In such case the stock would have been ample security for one-half of its nominal amount, its subsequent value being dependant upon the good or bad management of the affairs of the institution. If those who were intrusted with the management of the interests of the bank performed their duties so unskilfully and unsuccessfully as to deprive her of that security by rendering the stock valueless, she cannot resort to a security to enforce payment, which is designed for another and different purpose. Sections 16, 27, 28 and 29 of the charter are cited and relied upon as Conferring upon the appellees the right sought to be enforced by this action. Section sixteen provides that property already mortgaged may be received in guarantee upon the excess remaining after twice the amount of said mortgages shall be deducted from the whole value of the property. It also provides that money may be loaned upon the security of mortgages upon such property to stockholders or others, whenever the sum so borrowed was to be employed in the extinction of such prior mortgage or mortgages-. The 27th section provides “that mortgages for stock or loans granted by virtue of this act shall bear ten per centum interest per annum after maturity if not punctually paid, and that the mortgaged property may -be seized and sold,” &c. . As we have already seen, the mortgages for stock, with the bonds executed by stockholders were intended as a security for the reimbursement of the capital of the bank, and in case of failure to comply with their conditions by the stockholders, the mortgages are under this section to bear ten per cent interest. Mortgages by loans as spoken of by this section are mortgages authorized by the 18th section of the charter to persons not stockholders. These sections, as well as the 28th and 29th have reference to entirely distinct matters than those contended for by the appellees, and do not either expressly or by implication in the most remote manner sustain the right claimed by the trustees and sought to be enforced by this action. From a careful examination and consideration of the various provisions of the charters we are of opinion that the bank possessed no other interest whatever in the stock mortgages executed by the stockholders under the thirteenth section of the charter than a fiduciary one, and the only action which she could have maintained upon them during her corporate existence would have been in her fiduciary capacity in the execution of the specific trusts conferred upon her by the charter. If it should prove that the assets of the bank are insufficient to discharge her liabilities (and the reimbursement of the capital is made her duty by the charter, and is consequently a portion of her liabilities) it is the interest of the State as well as the holders of the bonds that the stock bonds and mortgages should be held strictly as a security for the repayment of the capital obtained upon the credit of the State, and as a guarantee to the State against loss or injury. While the claim here asserted by the trustees of the bank is wholly unsupported by the charter, either expressly or by implication» it is contrary to public policy as well as the interests of the State and the bondholders that it sho'uld be sustained. It is well calculated to incumber the property mortgaged with conflicting titles requiring future litigation to determine them, and would consequently depreciate the value of the property. Purchasers would not bid a fair and full price for property at a sale under a decree of foreclosure, when the property should be already held by a previous purchaser at a sale under prior decree upon the same mortgage. Although the title under the last decree might be the better and paramount title, yet prudent men will not risk their money in the purchase of property at a full and fair price when it is incumbered with a lawsuit. The allowance of such a claim would therefore weaken the security of the State and the bondholders, and would pro tanto deprive the State of that guarantee against loss and injury required by the constitution and provided by the charter of the bank. The bank held the bonds and mortgages as a mere trustee for specific purposes» she therefore had no power to transfer or dis-pose of them except in the exercise of the powers and execution of the trusts with which she was specifically clothed. She had no power to transfer them to trustees, or to provide other and different depositories for them, than those provided by the charter and an attempt to do so was a breach of the trust and confidence' reposed in-fiel-. We are therefore of opinion that the complainants have no interests whatever, either general or special in the mortgages executed by stockholders to secure the amount of stock subscribed for by them, and that they possess no right of action whatever, upon such mortgages for the purposes designated by their bill. The decree-of the circuit court sitting in chancery must therefore be reversed, and this cause be remanded with instruction to the court below to dismiss the bill for want of equity.